## BYERS v. DUNHAM, *County Treasurer, et al.*

No. 6994.   Opinion Filed July 20, 1915.

(150 Pac. 1049.)

1. **MUNICIPAL CORPORATIONS—Towns—Bridge Bond Election—Qualified Voters.** In this state a town of 1,500 population or less is a part of the municipal township within the corporate limits of which it is located, and the voters of such a town are entitled to participate in an election at which a proposition to issue bridge bonds is submitted to the voters of such a township in compliance with the provisions of section 26, art. 10, of the State Constitution.

2. **CONSTITUTIONAL LAW—Special Statute—Raising Constitutional Question—Petition.** In an action by which the constitutionality of a local or special statute is questioned because no notice of its intended introduction was given as required by section 32 of article 5 of the State Constitution, it is necessary to allege that such notice was not given, the presumption of law being that when such an act has been enrolled, approved, and filed in the office of the Secretary of State the constitutional prerequisites to its passage by the Legislature were observed by that body.

3. **TOWNS—Expenditure of Funds—Bridge Bonds—Operation of Statutes.** The provision of chapter 214, sec. 3, of the Session Laws of 1913, to the effect that "no township funds shall be used

or expended except in the township where raised, * * *" and that provision of chapter 190, sec. 1, Session Laws 1913, which says that "the township board of directors of any township in the State of Oklahoma bordering on or lying adjacent to any river, is hereby authorized and empowered in the manner provided by this act, to issue bonds of such township for the purpose of building, constructing, repairing or purchasing bridges across such river, * * *" are not so antagonistic that the latter act is nullified by the former, both acts having been passed at the same session of the Legislature, and the latter, being a specific provision of the Bridge Bond Act, must govern with respect to the subject-matter of that act and will stand as against the general provisions of the other statutes.

(Syllabus by Wilson, C.)

*Error from District Court, Mayes County;*

*Preston S. Davis, Judge.*

Action by S. A. Byers against J. B. Dunham, as County Treasurer, and others. Judgment for defendants and plaintiff brings error. Affirmed.

*J. H. Langley,* for plaintiff in error.

*William T. Hutchings,* for defendants in error.

Opinion by WILSON, C. Early in the year 1914, under the provision of chapter 190 of the Session Laws of 1913, a proposition was submitted to the people of Saline township, Mayes county, to vote bonds in the sum of $20,000 to raise funds for the erection of a bridge across Grand river, which bounds said township on the west. The election resulted in the bonds being authorized, and they were issued and placed in the hands of the county treasurer to be offered for sale. Plaintiff in error, as plaintiff, thereupon commenced an action in the district court of that county to enjoin the sale of the bonds and to enjoin the officers of the county from putting into operation the taxing machinery of the county to levy and collect taxes on account thereof. The defendants, who

are the defendants in error in this court, demurred to plaintiff's petition, the demurrer was sustained by the court, and the case was brought here on appeal.

Contained within the boundaries of Saline township is Salina, a town of less than 1,500 population, whose voters participated in the bond election, and one of the chief contentions of the plaintiff in his injunction suit was, and is here, that the town of Salina was no part of the municipal township of Saline; that its voters had no right to participate in said bond election; that three-fifths of the voters of Saline township, exclusive of the voters of the town of Salina, voting at said election, did not assent to the issuance of the bonds; and that said bonds are therefore void as having been issued in violation of the provisions of section 26 of article 10 of the Constitution of Oklahoma. This was the chief issue of law on which the demurrer was tried in the district court, and is the issue chiefly urged in the briefs in this court, and will be the first proposition considered.

To determine the question of whether Salina was a part of the municipal township of Saline, and whether its voters had the right to participate in the bond election held to authorize the bridge bonds in question in this action, it will, we think, only be necessary to digest section 8172 of the Revised Laws of Oklahoma 1910, which reads, in part, as follows:

"The board of commissioners of each county shall organize same into municipal townships: Provided, that no city or incorporated town of more than fifteen hundred inhabitants shall be included within the corporate limits of any township. They shall cause a plat and record thereof to be made by the county clerk. * * * "

This section not being perfectly clear and unambigu-
ous with reference to what cities or towns shall or may
be included within the corporate limits of and be a part
of a municipal township, the question in point calls for
its interpretation as to whether a town of less than 1,500
population, located within the limits of a municipal town-
ship, constitutes a part of the township within which it
is located for general municipal township purposes, and,
if such a town shall be comprised within such a township
for such purposes, then the town of Salina constituted a
part of the municipal township of Saline, and properly
participated in the bond election in question, and plaintiff
in error's contention on that score must fail.

In arriving at the meaning of the above-quoted sec-
tion of the statute in respect to its application to this case
it will be necessary, if possible, to determine, from the
language employed, the intent of the Legislature when it
adopted that section of the Harris-Day revision of the
Code, and in doing so it becomes necessary to determine
the meaning of the sentence, "Provided, that no city or
incorporated town of more than fifteen hundred inhabit-
ants shall be included within the corporate limits of any
township," when taken in connection with all other parts
of the section.  The ambiguity of the entire section does
not consist in any ambiguity in the above-quoted sentence,
for that sentence is perfectly clear, and means that no
city or town of more than 1,500 inhabitants shall com-
prise a part of a municipal township, and it would do
violence to the English language to construe it to mean
that no city or town, of whatever population, shall be
comprised within a municipal township in this state, so
the only logical interpretation of the section referred to,
including the proviso, is that no municipal township shall

comprise within its municipal organization any city or town within its municipal limits having a population of more than 1,500, and any city or town therein having a population of 1,500 or less shall be comprised within such a township for general municipal purposes. There being no other statute on the subject, we believe this interpretation to be the correct one, and one which is in no way inconsistent with the general plan of state organization. We find counties comprising within their political organizat ons townships, school districts, cities, and towns, all having their distinct municipal organizations, and the interpretation of the section of the statute under consideration which makes an incorporated city or town of 1,500 population or less a part of the municipal township within the limits of which it lies in no way violates any statute of the state or logical rule of reasoning.

We, therefore, conclude that the town of Salina was a part of Saline township, and that its voters were legally entitled to participate in the bond election involved in the consideration of this action.

Plaintiff in error further contends that the Bridge Bond Act did not include within its scope the incorporated cities or towns located within the limits of townships of the state. We think there is nothing in that act inconsistent with the view here expressed. It is also contended that it is clearly the meaning of the Bridge Bond Act that each separate municipality, whether township, city, or town, should be a separate taxing district for the purposes of that act. That contention is probably correct when considered in connection with separate and independent actions of such municipalities; that is, when townships act in their township capacities, when cities

act in their capacities as cities, and when towns act in their individual capacities as towns, they must act independently of any other municipality within which they are located, but there is nothing in such a construction of the statute which will prevent an incorporated town of 1,500 population or less being a part and parcel of the municipal township in which it is located, any more than such a construction of the same statute would prevent a township being a part of the county in which it is located for general county purposes.

It is urged that the county commissioners were not the proper persons to call the bond election at which the bonds in question were authorized, for the reason that, although Mayes county is one of the counties in which township organization was attempted to be abolished, the act attempting to abolish it (chapter 214, Sess. Laws 1913) was unconstitutional because it was a special or local act, and no notice of its intended introduction was given as provided by section 32 of article 5 of the Constitution; but there was no allegation in plaintiff's petition that such notice was not given, and, in the absence of such an allegation, the presumption of law is, even though said act may be special or local, that when it was enrolled, authenticated, approved, and filed in the office of the Secretary of State, its passage by the Legislature was regular, and that the proper notice was given.

And, finally, it is contended that, if the township government abolition act is valid, it provides that "no township funds shall be used or expended except in the township where raised," and that, as one-half of the bridge proposed to be built with the proceeds of the bonds in question is in another township, Grand river

being the dividing line and the river to be bridged, the expenditure of Saline township funds therefor would be unauthorized and the bonds are therefore void, they having been authorized for that purpose only; but the Bridge Bond Act (Sess. Laws 1913, c. 190, sec. 1) expressly says:

"That the township board of directors of any township in the State of Oklahoma bordering on or lying adjacent to any river is hereby authorized and empowered in the manner provided by this act to issue bonds of such township for the purpose of building, constructing, repairing or purchasing bridges across such river. * * *"

And, as the two laws were passed at the same session of the Legislature, and related to different subject-matters, they are not to be construed as being inconsistent with each other, but the specific provision of the Bridge Bond Act must govern in respect of the subject-matter of that act, and will stand as against the general provision of the other act. *Columbia Bank & Trust Co. v. United States Fidelity & Guaranty Co.*, 33 Okla. 535; 126 Pac. 556.

Finding no error in the judgment of the district court of Mayes county, we recommend that the same be affirmed.

By the Court: It is so ordered.